PEOPLE *v.* CHISM

1. Criminal Law—Constitutional Law—Enforcement of Constitutional Right—Sacrifice of Right.

A criminal defendant cannot be compelled to sacrifice one constitutional right to enforce another.

2. Criminal Law—Right to Speedy Trial—Delay of Trial—Appellate Process.

The right to a speedy trial may be delayed if one of the parties invokes the appellate process or if the delay is caused by fixed rules of law.

3. Criminal Law—Right to Speedy Trial—Standards.

The right to a speedy trial is necessarily relative, may be consistent with delays, and depends upon the circumstances of each case; the right to a speedy trial secures rights to the defendant, but does not preclude the orderly administration of justice.

4. Criminal Law—Right to Speedy Trial—Delayed Trial—Appeal and Error—Standard of Review.

An appellate court in determining whether a delay in bringing the defendant to trial assumes constitutional proportions examines the circumstances closely to ascertain whether the delay was arbitrary, purposeful, oppressive, or vexatious.

---

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law § 48 *et seq.*
[2–8] 21 Am Jur 2d, Criminal Law § 251 *et seq.*
Waiver or loss of accused's right to speedy trial, 57 ALR2d 302.
Accused's right to speedy trial under Federal Constitution-Supreme Court cases, 21 L Ed 2d 905.
[9–12] 21 Am Jur 2d, Criminal Law §§ 298 *et seq.*, 324–326.
[13] 53 Am Jur, Trial § 513.
[14–19] 47 Am Jur, Searches and Seizures §§ 71, 72.
Authority to consent for another to search or seizure, 31 ALR 2d 1078.
[16] 47 Am Jur, Searches and Seizures § 52 *et seq.*
[20] 5 Am Jur 2d, Appeal and Error §§ 778, 781, 782.
[21] 5 Am Jur 2d, Appeal and Error § 803.

5. CRIMINAL LAW—RIGHT TO SPEEDY TRIAL—DELAYED TRIAL—AP-
PELLATE PROCESS.

> The appellate process when invoked by a defendant cannot be
> used by the defendant as a contention for a denial of speedy
> trial, especially where the appeal process results in the vin-
> dication of the defendant's claim.

6. CRIMINAL LAW—RIGHT TO SPEEDY TRIAL—DEMAND FOR TRIAL—
MOTION TO DISMISS—IN PROPRIA PERSONA MOTIONS.

> The requirement that a formal, record demand for trial must
> have been made to raise the denial of speedy trial issue on
> appeal was met where the defendant acting *in propria persona*
> made a motion for dismissal on the ground of denial of a speedy
> trial and where during a portion of proceedings, including the
> time the motion was made, defendant was without counsel.

7. CRIMINAL LAW—RIGHT TO SPEEDY TRIAL—DELAYED TRIAL—APPEL-
LATE PROCESS—STATUTES—FAIR TRIAL.

> A delay in bringing defendant to trial caused by the defend-
> ant's invoking the appellate process to vindicate his constitu-
> tional right to the assistance of counsel comes under the statu-
> tory exception that a delay is permissible if necessary to
> secure to the defendant a fair and impartial trial (MCLA
> § 768.1).

8. CRIMINAL LAW—RIGHT TO SPEEDY TRIAL—DELAYED TRIAL—AP-
PELLATE PROCESS.

> A 27-month delay in bringing the defendant to trial was not
> arbitrary, purposeful, oppressive, or vexatious, and did not
> harm the defendant's cause so as to constitute a denial of
> the defendant's right to a speedy trial where 14 months of
> the delay were consumed by the defendant's invoking the
> appellate process in vindication of his right to the assistance
> of counsel and where the appellate court attempted to remove
> delay by shortening the time for filing of briefs to one-half
> the regular time.

9. CRIMINAL LAW—EVIDENCE—OTHER CRIMINAL ACTS—ADMISSIBIL-
ITY—PROSECUTOR'S BURDEN.

> Evidence of prior acts of a criminal defendant may be relevant
> to a showing of motive for commission of the crime charged;
> the burden is on the prosecution to demonstrate to the trial
> judge the relevance of the proffered evidence (MCLA § 768.27).

10. CRIMINAL LAW—EVIDENCE—OTHER CRIMINAL ACTS—DISPOSITION
TO CRIME—ADMISSIBILITY.

> Evidence of other criminal acts of a defendant are admissible

to prove motive, intent, or plan in committing the crime charged, but is not admissible merely to show disposition to do a criminal act (MCLA § 768.27).

11. Homicide—Murder—Evidence—Other Criminal Acts—Admissibility—Plan—Motive.

Admission into evidence in defendant's trial for first-degree murder of a pill bottle containing lye tablets which had previously been mailed to the murder victim was not reversible error where the victim was killed when a package containing a bomb which had been mailed to her exploded because the evidence showed the motive, intent, or common plan to kill the deceased and to kill the deceased by sending some harmful substance through the mail (MCLA § 768.27).

12. Homicide—Murder—Evidence—Other Criminal Acts—Intent to Kill—Admissibility.

The admission by the defendant charged with first-degree murder to the obvious fact that the sending of a bottle of poisonous pills to the victim showed an intent to kill the murder victim did not preclude the prosecution from introducing proofs as to the element of intent where the defendant did not admit that the intent was his own.

13. Criminal Law—Evidence—Other Criminal Acts—Statutes—Instructions to Jury—Unrequested Insruction—Court's Duty.

Instructions to jury limiting consideration of evidence of the defendant's criminal acts introduced pursuant to the statute allowing the use of such evidence to show motive, intent, common scheme, or plan, need not be given unless the defendant requests them (MCLA § 768.27).

14. Searches and Seizures—Consent to Search—Burden of Proof.

The prosecution has the burden of showing by clear and positive evidence, at a hearing on a motion to suppress evidence seized in a search consented to by the defendant that the defendant's consent was unequivocal, specific, and freely and intelligently given.

15. Searches and Seizures—Consent to Search—Voluntary Consent.

A consent to a search was unequivocally, specifically, and intelligently given where the defendant signed a consent form acknowledging that he had been informed of his right to not have a search made without a search warrant and of his

right to refuse to consent to a search and that the consent
was given voluntarily, the prosecution stated that the police
did not inform the defendant that they would get a warrant
and make a search if consent was not given because they
thought this would be considered coercion, and where the
transcripts of the suppression hearing do not indicate that
the defendant denied that his consent was freely and intel-
ligently given.

16. SEARCHES AND SEIZURES—SEARCHES—POLICE OFFICERS' ENTERING
HOME.
   Police officers' entering a home and requesting certain documents
   from the occupant can hardly be considered anything but a
   search.

17. SEARCHES AND SEIZURES—CONSENT TO SEARCH—HOLDER OF
PRIVILEGE.
   The party who is charged with an offense is the one who has
   a right against unreasonable searches and seizures, and only
   he alone, not an outside party, can waive the right.

18. SEARCHES AND SEIZURES—CONSENT TO SEARCH—OUTSIDE PARTY'S
CONSENT—EFFECT.
   A consent to a search given by an outside party, who cannot
   waive the defendant's right against unreasonable searches and
   seizures, neither adds nor detracts from the search; the
   legality of the search depends upon circumstances directly
   related only to the holder of the right.

19. SEARCHES AND SEIZURES—CONSENT TO SEARCH—SEARCHES SUB-
SEQUENT TO CONSENT—LIMITATIONS.
   A second search of the defendant's premises made two days
   after the day on which the defendant gave a valid consent
   to a search and the first search was made was unlawful and
   items seized during that second search were inadmissible where
   the consent form did not authorize a search "at any time",
   because a consent is not permission for the authorities to
   enter at will the premises in question any time after the
   consent has been given, and, because a consent does not mean
   the constitutional protection against unreasonable searches
   and seizures has been waived forever.

20. CRIMINAL LAW—CONSTITUTIONAL ERRORS—APPEAL AND ERROR—
STANDARD OF REVIEW.
   Every constitutional error is not necessarily harmful; the test

on appeal is whether the reviewing court believes that the error was harmless beyond a reasonable doubt.

21. CRIMINAL LAW—EVIDENCE—INADMISSIBLE EVIDENCE—HARMLESS ERROR.

The admission of a notebook and checkbook used for handwriting analysis to identify the defendant as the perpetrator of the charged offense was harmless error beyond a reasonable doubt even though the notebook and checkbook were obtained in an illegal search where the handwriting expert used, in addition to the notebook and checkbook, specimen writings of the defendant, defendant's boat registration form, and defendant's application for a driver's license to make the comparison and identification, and none of the latter evidence was contested as evidence.

Appeal from Calhoun, Creighton R. Coleman, J. Submitted Division 3 March 3, 1971, at Grand Rapids. (Docket No. 9278.) Decided April 22, 1971. Leave to appeal granted, 387 Mich 760.

Enoch Chism was convicted of murder in the first degree. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John M. Jereck,* Prosecuting Attorney, for the people.

*William R. Worth,* for defendant.

Before: FITZGERALD, P. J., and HOLBROOK and BRONSON, JJ.

FITZGERALD, P. J.    Defendant appeals by right from a jury conviction and life sentence on a charge of murder in the first degree.[1]

On August 16, 1967, a package was mailed to the residence of Mrs. Paul Puyear in the city of Mar-

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

shall, Michigan. Due to standing instructions, the package was rerouted and delivered to the Puyears' business address, a restaurant called the Tasty Cafe.

Nola Puyear attempted to open the package and it exploded, killing her instantly and doing substantial damage to the Tasty Cafe. An investigation at the scene turned up the wrapper of the package with the address written in red on it, pieces of masking tape, and metal fragments from a "Fiske" battery. Also found at the scene was a pill bottle and its contents and wrapper. It appears that this pill bottle, with pills containing sodium hydroxide (lye), had been mailed to the deceased some months earlier. An examination of the reassembled bomb wrapper indicated that the package had been mailed in Marshall.

Subsequent investigation led to the arrest of defendant; a search of his home resulted in the seizure of masking tape, a "Fiske" battery, and a red pencil similar to that used to address the package. From a comparison of the handwriting of defendant and the handwriting on the package wrapper and the pill wrapper, there was expert testimony that the writing was done by one and the same person. There was also testimony to the effect that the defendant was desirous of buying the Tasty Cafe from the Puyears.

Chism testified, while denying that he sent the bomb or the pills, that he purchased dynamite in 1966.

Helpfully, the Court has been assisted by excellent briefs by both defendant and the people, setting forth the issues raised and furnishing cogent arguments for both sides. The issues will be considered *seriatim.*

I. *Was appellant denied his constitutional right to a speedy trial?*

Mainstay of defendant's appeal is that the delay from his arrest on October 11, 1967, to his trial on January 20–30, 1970, was such a denial of his constitutional right to a speedy trial that it requires the reversal of his conviction and his discharge. He argues that the fact that the delay was caused by his appeal of the lower court's denial of his petition for counsel does not excuse the delay, mainly because the state cannot require a defendant to sacrifice one constitutional right (speedy trial) to enforce another (assistance of counsel). Defendant also argues that his lack of a formal demand for trial does not cure the error because he was without counsel for most of that time.

In opposition, the people argue that it was defendant who caused the delay because he invoked the appellate process prior to trial. It is also pointed out that defendant never made the required formal motion for trial.

Defendant was arrested on October 11, 1967, according to the record. On October 18, 1967, defendant petitioned for the appointment of counsel as an indigent. On October 18 and 27, 1967, and December 26, 1967, the court heard testimony relative to his financial status. Prior to this, the court appointed counsel for the preliminary examination which was held on November 16, 1967. On January 9, 1968, the lower court entered its finding denying appointed counsel for the trial. A formal order to such effect was filed on January 12, 1968, and counsel was appointed for the appealing of this order on January 18, 1968. On February 10, 1968, the appointed counsel filed an application for leave to appeal with this Court.

Thereafter, on March 29, 1968, an order was entered granting leave to appeal, granting leave to intervene *amicus curiae* to the Prosecuting Attorneys Association of Michigan, and shortening the time for the filing of briefs to one-half the regular period.

On July 1, 1968, defendant filed a motion and stipulation to advance the hearing date which was denied by order on July 10, 1968. Oral argument before this Court was had on November 13, 1968, and an opinion was entered on April 23, 1969, reversing the lower court and granting appointed counsel. See *People* v. *Chism* (1969), 17 Mich App 196. On April 25, 1969, the lower court appointed counsel for defendant.

While this appeal was in progress, defendant filed *pro se* a motion to dismiss for denial of a speedy trial on June 20, 1968. On July 24, 1968, the prosecutor filed an answer to this motion which was served on defendant on August 19, 1968. A hearing was not held on this motion on April 10, 1969, and the dismissal motion was denied by order entered April 21, 1969.

In April, the lower court informed defendant that trial could be held in either May or August of 1969, but defendant wished to make some pretrial motions first. On June 19, 1969, this time through counsel, defendant made a motion to quash for a denial of speedy trial which was denied by order on August 18, 1969.

On September 19, 1969, defendant made a motion for immediate trial and the case was set for trial in October, 1969. A motion for a continuance was filed by defendant after additional witnesses, opposed by defendant, were indorsed. Finally, the case was tried January 20–30, 1970.

Thus, the record shows that there was a 27-month interval between arrest and trial (October 1967 to January 1970), and of this time 14 months were taken up in appeals to this Court (February 1968 to April 1969).

Defendant is correct in his contention that a defendant cannot be compelled to sacrifice one constitutional right to enforce another. *Simmons* v. *United States* (1968), 390 US 377 (88 S Ct 967, 19 L Ed 2d 1247); *People* v. *Marsh* (1968), 14 Mich App 518. However, neither of the above cases dealt with the instant fact situation. Indeed, it appears that this situation (loss of speedy trial due to invoking the appellate process) is one of first impression in Michigan, if not the country.

There is no doubt that the constitutional right to a speedy trial is guaranteed to citizens in state prosecutions through the Fourteenth Amendment to the United States Constitution. *Klopfer* v. *North Carolina* (1967), 386 US 213 (87 S Ct 988, 18 L Ed 2d 1); *Duncan* v. *Louisiana* (1968), 391 US 145 (88 S Ct 1444, 20 L Ed 2d 491). The right to a speedy trial is also guaranteed to Michigan citizens by MCLA § 768.1 (Stat Ann 1954 Rev § 28.1024).

However, the flaw in defendant's position, and which is dispositive of the issue, is the fact that the delay was caused by his repeated recourse to the appellate process.

It appears that the invoking of appellate machinery serves to modify the speedy trial right. In *People* v. *Den Uyl* (1948), 320 Mich 477, the Court, in granting a writ of mandamus requiring the conclusion, within 60 days, of a preliminary examination which had been continued eight times, said:

"One of the circumstances which will constitute good cause for delay, again within reasonable limits

of time, *is the taking of an appeal,* whether by the State or another party.   See *People* v. *Grisea,* 63 Cal 345, and the annotation in 56 LRA 513, 519." 320 Mich 489.   (Emphasis supplied.)

The Court in *Den Uyl, supra,* went on to say:

"It is sometimes said that a speedy trial means a trial regulated by fixed rules of law, *and that delay created by operation of those rules is not included in the meaning of the constitutional provision."* 320 Mich at 490.   (Emphasis supplied.)

Thus, *Den Uyl, supra,* points out that the right to a speedy trial may be delayed if one of the parties invokes the appellate process, or if the delay is caused by fixed rules of law.   Both of those criteria fit the facts here presented.

In a recent United States Supreme Court case, uncited by both parties, it was indicated that the initiation of appellate proceedings is good cause for resultant delay.   In *Harrison* v. *United States* (1968), 392 US 219 (88 S Ct 2008, 20 L Ed 2d 1047), the Court reversed a conviction upon retrial because of the use of inadmissible testimony.   It appears that one of the appellant's other contentions in that case was that he was denied a speedy trial because the original indictment was eight years old (see 20 L Ed 2d at 1698).   The Court, in answering this contention in a footnote, said:

"Virtually all of the delays of which the petitioner complains occurred in the course of appellate proceedings and resulted either from the action of a petitioner or from the need to assume careful review of an unusually complex case." fn 4, 392 US at 221 (88 S Ct at 2009, 2010, 20 L Ed 2d at 1051).

The United States Supreme Court also said that the speedy trial contention had been properly re-

jected by the Court of Appeals, District of Columbia. In that case, *Harrison* v. *United States* (1967), 128 App DC 245, 248, 249 (387 F2d 203), the Court said:

"The contention that appellants' Sixth Amendment right to a speedy trial has not been respected is predicated broadly upon the six-year lapse between the homicide and the third trial, but for this purpose we cannot treat litigation spans in a vacuum. 'There is no touchstone of time which sets a fixed maximum period that automatically requires application of the Sixth Amendment and dismissal of the indictment.' Rather, '[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' So in determining whether the delay complained of assumes constitutional proportions, we examine the circumstances closely to ascertain whether it was 'arbitrary, purposeful, oppressive or vexatious.'

"The time necessarily consumed in unraveling complex issues whose ultimate resolution vindicates the rights of the accused can hardly be said to constitute purposeful or oppressive delay. We are accustomed to careful study of the questions presented to us, particularly where human life or liberty is at stake, and surely this case has tolerated no deviation. '[T]he essential ingredient is orderly expedition and not mere speed'; indeed, '[a] requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.' One has but to examine the comprehensive opinions the second appeal brought forth to appreciate the court's task and foresee the risk that unwarranted haste might have worked to appellants' disadvantage. And there is no hint that any subsequent phase of this case radiates any constitutional implication."

The United States Supreme Court then, by its language and its approval of the language of the District of Columbia Court of Appeals, though dealing with a retrial rather than a first trial, says that the appellate process, when invoked by the accused, cannot then be used by the accused as a contention for a denial of speedy trial. It appears that this is especially so when the appeal process results, as it did in the instant case, in the vindication of the claim of the accused.

It is the general rule in Michigan that a denial of speedy trial issue cannot be raised unless a formal, record demand for trial has been made. *People* v. *Miklovich* (1965), 375 Mich 536; *People* v. *Duncan* (1964), 373 Mich 650; *People* v. *Frazier* (1969), 16 Mich App 38. Although defendant made no formal motion for a speedy trial, he did, on June 20, 1968, make a motion for dismissal on the grounds of denial of speedy trial. It should be noted that at this time defendant was still without counsel and was thus acting *in propria persona*. It is difficult to maintain the position that this *in propria persona* motion by defendant was not sufficient to meet the demand requirement, especially in light of the fact that *People* v. *Duncan, supra,* and *Miklovich, supra,* were decided before *Duncan* v. *Louisiana, supra,* and *Klopfer* v. *North Carolina, supra* (*contra,* see *People* v. *Frazier, supra,* p 42).

MCLA § 768.1 (Stat Ann 1954 Rev § 28.1024) provides:

"The people of this state and persons charged with crime are entitled to and shall have a speedy trial and determination of all prosecutions and it is hereby made the duty of all public officers having duties to perform in any criminal case, to bring such case to a final determination *without delay*

*except as may be necessary to secure to the accused
a fair and impartial trial."* (Emphasis supplied.)

In the instant case, the complained-of delay was
"necessary to secure to the accused a fair and im-
partial trial", *i.e.*, to enable him to have the assist-
ance of counsel. Thus, the delay in this case would
very easily come under the exception in the statute.

The 27-month delay in the case at bar is lamenta-
ble. No one involved in the administration of crim-
inal justice desires or advocates this length of delay,
especially those concerned with the appellate proc-
ess. However, it can hardly be said in the instant
case that the delay was "arbitrary, purposeful,
oppressive, or vexatious", *Harrison, supra,* espe-
cially in light of the fact that this Court shortened
the time for filing of briefs to one-half the regular
time (order of March 29, 1968). The time involved
appears not to have exceeded justifiable bounds
nor to have harmed defendant's cause.

II. *Was it error for the lower court to admit
into evidence certain items that tended
to indicate appellant had made a
prior attempt on the life
of the deceased?*

Defendant contends that it was reversible error
for the trial court to admit into evidence a pill
bottle and wrapper that had been sent to the de-
ceased sometime before the bomb. The bottle con-
tained pills made of lye. The handwriting on the
label was identified as being that of defendant.
The label provided "Transvex tablets for release of
nervous tension, restlessness, and irritability". It
could be said that the hope of the sender was that
Mrs. Puyear would take the pills and thus be
poisoned.

Defendant contends that it was error to admit this under the provisions of MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050), because there was no question of motive or intent involved. Also, it is urged that the judge's failure to give limiting instructions to the jury concerning this evidence is reversible error, even though the judge was not requested to do so.

The people argue that the evidence was clearly admissible under the statute, contending that the defendant cannot preclude the prosecution from using the statute merely by admitting that motive or intent was not at issue. The people further contend that because defendant took the stand and denied his guilt all elements of the crime were in issue and therefore the evidence could be introduced under the statute to show intent, motive, scheme, and system.

The trial court admitted the evidence for proof of intent under the statute. The court reasoned, and quite logically so, that to allow a defendant to admit intent on the part of some party (not defendant) and thus be able to bar the evidence would make the statute rather nonsensical.

MCLA § 768.27 (Stat Ann 1954 Rev § 28.1050) provides:

"In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission

of another or prior or subsequent crime by the defendant."

In interpreting this statute, this Court said in *People* v. *Shaw* (1968), 9 Mich App 558:

"Evidence of prior acts of a criminal defendant may be relevant to a showing of motive for commission of the crime charged. The burden is upon the prosecution to demonstrate to the trial judge the relevance of the proffered evidence. *People* v. *Askar* (1967), 8 Mich App 95. Despite its relevancy it should be excluded where probative value is outweighed by attendant prejudice to the defendant. The assessment of the relative weight of these two factors is within the discretion of the court.

"Where intent or motive is material and relevant, the mere fact that the prior act is itself a crime does not render the evidence inadmissible. *People* v. *Allen* (1958), 351 Mich 535. Proof of motive is highly relevant in a case such as this where there are no eyewitnesses and the prosecution's case is necessarily a circumstantial one. Defendant's interests must be weighed heavily, however, where the motive is evidenced by criminal acts. The problem is most acute and the inflammatory tendency of such evidence most pronounced where the act is an alleged rape of decedent's wife by defendant. Such is the case here." 9 Mich App 566.

Additionally, although other acts may be introduced to show motive, intent, or plan, this statute cannot be used to introduce evidence that merely shows disposition to do a criminal act.

In *People* v. *Johnson* (1968), 13 Mich App 69, the defendant was convicted of murdering one of his fellow inmates in Jackson Prison. The prosecutor at trial introduced evidence of prior arguments, fights, and disturbances that defendant had been involved in. This Court said in reversing the case:

"The prosecutor's explanation before the trial court that such evidence was offered to show 'disposition toward violations' is equally untenable. In a trial for a criminal offense, evidence of other distinct offenses is generally inadmissible, unless tending to show 'motive, intent, the absence of, mistake or accident,' or, in sexual offenses, to show 'opportunity, disposition of the parties, and intimate relations tending to break down self respect.' *People* v. *Williams* (1965), 2 Mich App 91, 94. These exceptions are not applicable in a homicide case where the evidence of unrelated and dissimilar prior incidents is offered solely to prove defendant was more likely to have committed, or disposed toward the commission of, that offense for which he stands trial.

"Evidence of unrelated and collateral matters 'raises false issues and is likely to lead the jury to try the accused of what is not in the information.' *People* v. *Pinkerton* (1889), 79 Mich 110, 113. To compel defendant to answer such charges is to bring him to *trial on one charge and ask him to acquit himself on another.* See *People* v. *Wright* (1940), 294 Mich 20. Such conduct by the prosecutor, in this case, created a highly prejudicial atmosphere for the defendant. Prosecutor's arguments before the trial and before this Court justifying admission of the evidence are untenable." 13 Mich App 72.

Other cases have held that evidence of previous fights is not admissible under the statute where, unlike here, the charge is manslaughter and the defendant claims self defense. *People* v. *Matthews* (1969), 17 Mich App 48; *People* v. *Wright* (1940), 294 Mich 20.

In the instant case, the contested evidence was offered to show the design, plan, motive, intent, *etc.,* of the defendant on a charge of first-degree murder. It would seem to be reasonable under the

statute to show, by previous acts, that defendant intended or planned to kill the deceased by sending some form of harmful article to her through the mail.

Defendant argues that because intent was not in issue (the person who sent the package obviously intended to kill the deceased) the prosecutor should not be permitted to offer proofs under the statute to show intent. This argument has some defects. First, the fact that some of the elements are admitted does not preclude the prosecutor from introducing proofs as to those elements. *People* v. *Neaton* (1940), 294 Mich 134. Second, the intent in issue was the intent of the defendant, and he obviously did not admit that he had the intent to send the bomb. As the trial judge so succinctly pointed out, to permit the defendant to prohibit the people from introducing proofs as to intent merely by the defendant admitting that there was intent (but not his) would defeat the purpose of the statute.

It appears, then, that this issue really comes down to whether or not the prior attempt to kill the deceased showed a common plan, scheme, system, or intent or motive. There can be little argument but that poison pills in the mail has some relation to a bomb in the mail. Admission was not reversible error.

Defendant further argues that even if the evidence was properly admitted, it was reversible error for the lower court to fail to give specific instructions to the jury concerning the evidence. It does not appear that the defendant requested these instructions, and he also did not object to the instructions as given. Nevertheless, defendant argues that it was the duty of the trial judge to give the instructions even in the absence of a request, relying on *People* v. *Askar* (1967), 8 Mich App 95.

In *Askar, supra,* the defendant was charged with sodomy, not murder. This Court held that the statute was not applicable to sodomy prosecutions because motive, intent, scheme, or plan is not involved. Thus, that case did not really deal with the statute. The prior acts in *Askar, supra,* were admitted not under the statute but under the common-law exception which permits prior offenses to show opportunity, disposition of the parties, and intimate relations tending to break down self-respect in sexual offenses. It was for evidence of prior acts under the common-law rule that this Court required limiting instructions, even if not requested.

Additionally, recent cases in this Court have held that the failure to give unrequested limiting instructions concerning evidence admitted under the statute is not reversible error. *People* v. *Anderson* (1968), 13 Mich App 247; *People* v. *Stevens* (1970), 25 Mich App 181; *People* v. *Albert White* (1970), 27 Mich App 432.

### III. *Was the seizure of evidence from appellant's home the result of an unreasonable search and seizure?*

Defendant argues that the consent search of his home was unlawful because, prior to the search, he was not warned of (1) his right to refuse access without a warrant and (2) the fact that a consent search is broader than a warrant search.

The prosecution states that the defendant was adequately warned of his rights, and that he intelligently, knowingly, and voluntarily waived his rights by signing a consent in the following form:

"I, Enoch D. Chism, having been informed of my constitutional right not to have a search made of

the premises hereinafter mentioned without a search warrant, and of my right to refuse to consent to such a search, hereby authorized M. L. Myers, Post Office Inspector, and Leroy Steinbacher, of the Mich State Police Dept, to conduct a complete search of my residence located at 15969 C Drive North & the curtilage & 1964 Ford Fairlane & 1965 Pontiac. The above named are authorized by me to take from my residence any letters, papers, materials or other property which they may desire.

"This written permission is being given by me to the above named voluntarily and without threats or promises of any kind."

Defendant made a pretrial motion to suppress the articles seized in the search (battery, masking tape and red pencil). At the hearing on the motion, it was established that the defendant was warned of his rights that anything found would be used against him as evidence, that defendant signed the consent without any deceit or trickery on the part of the investigators, and that he had been informed of his right to refuse to sign the consent.

The trial judge found that the search was lawful and the evidence was thus admitted.

The general rule is that the prosecutor has the burden of showing that the consent for a search given by the accused was unequivocal, specific, and freely and intelligently given. It must be proven by clear and positive evidence. *People* v. *Kaigler* (1962), 368 Mich 281; *People* v. *Shaw* (1970), 383 Mich 69.

In the instant case, defendant signed a consent form that said he had been informed of his constitutional right not to have a search made without a warrant and of his right to refuse to consent to the search, requirements set forth in *People* v. *Zeigler* (1960), 358 Mich 355.

In addition, the transcripts of the suppression hearings do not seem to indicate that defendant denied that his consent was freely and intelligently given.

In *People* v. *Shaw* (1970), 383 Mich 69, the Court reversed a murder conviction and remanded for a new trial because evidence was admitted where the consent was not shown by clear and positive evidence. There, unlike here, there was no signed consent form and there was only the testimony of one officer, which resulted in some contradictions. Here, there appears to be no question as to the consent being freely given.

In *People* v. *Kaigler* (1962), 368 Mich 281, the Court reversed and ordered a new trial because of a coerced consent search. However, in that case, the Court felt it of utmost significance that the police stated that they would search the home whether or not they got the keys from the defendant. The Court felt this was coercive. In the instant case, the prosecution says that the police did not inform defendant that if he didn't give his consent they would get a warrant and make the search anyway because this would be considered coercion, as in *Kaigler, supra.*

There is scant authority for defendant's contention that the police have to warn him of the fact that a consent search is broader than a warrant search. Further, as to the contention that he could refuse access without a warrant, the consent form defendant signed stated that he had been informed that he had a right to refuse a search absent a warrant.

The consent was unequivocal and specific, freely and intelligently given, and this was shown by clear and positive evidence. No error resulted.

IV. *Were the checks and notebooks seized by the officers in the second search a product of an unreasonable search and seizure?*

After the initial consent search of the defendant's home on October 11, 1967, the police returned to the house on October 13, 1967. At that time, they did not have a warrant. Defendant's wife admitted them to the house and the police informed her that they wished to have defendant's checkbook and notebook that they had seen during the previous search. Defendant's wife went into another room and returned with the items. The police then left and the two articles were used for handwriting analysis and admitted as exhibits 38 and 39.

Defendant argues that these items should not have been admitted because they were the fruits of an illegal search and seizure. The search, he claims, was defective because (1) the original consent could not be used for a subsequent search and (2) defendant's wife could not waive his right against unreasonable searches and seizures. The prosecution counters with the view that there was really no search, the officers merely went to the home and requested the articles. The prosecution contends that a wife can consent to the search of a place of which she is a joint user.

It is difficult to sustain the position that this in fact was not a search by the police officers. Police officers' *entering* a home and requesting certain documents from the occupant can hardly be considered anything but a search. See *Bumper* v. *North Carolina* (1968), 391 US 543 (88 S Ct 1788, 20 L Ed 2d 797).

As to the question of the consent given for the earlier search, and whether or not such consent remains in effect for subsequent searches, there is

little authority in Michigan. The United States Supreme Court has not yet definitively addressed this issue.

In *People* v. *Nawrocki* (1967), 6 Mich App 46,[2] this Court permitted a second search of an automobile in the afternoon, after it had previously been searched in the morning, basing the decision upon the fact that the appellant there had said the police could search his car "at any time". Additionally, there, unlike here, the automobile was parked in the police garage.

In *People* v. *Flowers* (1970), 23 Mich App 523, this Court held that a parent cannot waive by consent a minor's right to an unreasonable search and seizure, even if the minor is living at home and is being supported by the parent. The Court felt that the father there, as apparently is the wife here, was a third party or an outsider when considering the crime charged. It is the charged party who has the right and can waive it, not an outside party.

Michigan cases have also held that an attorney cannot waive the search privilege for his client, *People* v. *Kaigler* (1962), 368 Mich 281; and that the defendant's grandmother who owned the premises wherein defendant rented cannot waive the defendant's search privilege, *People* v. *Overall* (1967), 7 Mich App 153.

The wife's consent can be said to have neither added to nor detracted from the search. The legality of the search itself is the paramount concern. The consent originally executed by defendant is reproduced, *supra*.

Under the instant facts, and considering the traditional narrow interpretation given to consents obtained during custody, we decline to hold that the consent given by defendant for the search on

2 *Cert den* 389 US 942 (88 S Ct 304, 19 L Ed 2d 296).

October 11, 1967, was sufficient to render constitutional the second search on October 13, 1967.

We have not found, nor have we been directed to, any authority that establishes a consent as permission for the authorities to enter at will the premises in question at any time thereafter. When consent is given to search an area, it does not mean the constitutional protection against unreasonable searches and seizures has been waived forever.

Indeed, we think there is a difference between a continuing or subsequent search on the same day as in *People* v. *Nawrocki* (1967), 6 Mich App 46, *cert den* 389 US 942 (88 S Ct 304, 19 L Ed 2d 296), and one on a subsequent day. Thus, the checkbook and notebook seized in the second search were improperly seized and not admissible as evidence. *Mapp* v. *Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933).

Notwithstanding the inadmissibility of the notebook and checkbook, the conviction does not fall. Every constitutional error is not necessarily harmful, the test being whether or not we believe the error was harmless beyond a reasonable doubt. *Chapman* v. *California* (1967), 386 US 18 (87 S Ct 824, 17 L Ed 2d 705).

The testimony of the handwriting expert clearly indicates that he used a number of other items in making the identification. In addition to the contested notebook and checkbook, the expert also used specimen writings of the defendant, the defendant's boat registration form, and the defendant's application for a driver's license to make the comparison and identification. None of the latter are contested as evidence.

We, therefore, hold that the admission of the notebook and checkbook was harmless error beyond a reasonable doubt as required by *Chapman, supra.*

In closing, we note that the entire record of this cause has been exhaustively reviewed, both in this case and in the prior opinion of this Court. No reversible error is found and accordingly the cause is affirmed.

All concurred.