Enoch D. CHISM, Petitioner,

v.

Theodore KOEHLER, Individually and as
Warden of Marquette Branch Prison,
Respondent.

No. M–74–29CA–2.

. . . United States District Court,
W. D. Michigan, N. D.

April 18, 1975.

Peter H. Shumar, Marquette, Mich., for petitioner.

William S. Easton, A.C.L.U., Marquette, Mich., amicus curiae.

Joel M. Shere, A.C.L.U., Detroit, Mich., amicus curiae.

Frank J. Kelley, Atty. Gen., Patrick O. Landy, Asst. Atty. Gen., Lansing, Mich., for respondent.

## OPINION

RALPH M. FREEMAN, District Judge.

This is a petition for a Writ of Habeas Corpus by Enoch D. Chism who has been convicted of first-degree murder in connection with the death of one Mrs. Nola Puyear. The decedent was killed on August 18, 1967 as she opened a package which had just been delivered to her through the mail. It was an innocent looking package marked "books", but which in fact contained an explosive device. Trial evidence showed that the package had been mailed in Marshall, Michigan and was delivered to Mrs. Puyear at the restaurant owned and operated by her and her husband in that city.

During the police investigation which followed her death, handwriting samples were taken from a number of persons in the community, including the petitioner. As a result of that investigation Enoch Chism was arrested and charged with first-degree murder on October 11, 1967. At the time of his arrest, both petitioner and his wife gave written consent to a search of their home which was conducted at about ten o'clock that morning. A roll of masking tape, a red marking pencil and a "Fiske" brand "C" battery were seized as a result of that search. These items were admitted at trial in conjunction with expert testimony that they had similarities to fragments found at the explosion site. During the afternoon of the following day, October 12th, two officers returned to the Chism residence and requested Mrs. Chism to turn over certain cancelled checks and a note book which had been seen in the Chisms' bedroom during the search of the previous day. Mrs. Chism did so. Together with the pre-arrest handwriting samples these items were used at trial as evidence that the address label on the

bomb package was in the handwriting of Enoch Chism.

As will be set forth below, the trial of this matter did not commence until January 20, 1970, some twenty-seven months after petitioner's arrest, during which time he was continuously incarcerated without bond in the Calhoun County Jail. For more than 15 months of this period he was also without the assistance of counsel.

Petitioner has exhausted his state remedies by appeals to the Michigan Court of Appeals, People v. Chism, 32 Mich.App. 610, 189 N.W.2d 435 (1971), as well as the Michigan Supreme Court, People v. Chism, 390 Mich. 104, 211 N.W.2d 193 (1973). His conviction was upheld in both instances.

Two independent grounds are asserted in support of this petition. First, that the twenty-seven month delay between his arrest and trial worked a denial of his constitutional right to a speedy trial. Secondly, that his wife's delivery of the checks and note book to the police on the day following his arrest violated his right to be free from warrantless searches and seizures. The American Civil Liberties Union of Michigan, as amicus curiae, has briefed and argued this matter in support of the petitioner on the speedy trial issue.

*The Search and Seizure Issue*

█ As set forth briefly above, items were removed from the petitioner's home on two separate occasions, the morning of October 11, 1967, and the afternoon of October 12, 1967. The items taken on October 11th were seized during a consent search immediately following petitioner's arrest. A quantity of cancelled checks and a notebook taken on October 12th were delivered to the police by Mrs. Chism at the request of two of the officers who had participated in the consent search the previous day.

Petitioner claims that the checks and notebook were improperly admitted at trial because, (1) his wife had no au-

thority to consent to a seizure, and (2) his consent to the search of October 11th did not justify the return for items on the following day.

Several facts are especially pertinent. First, the checks and notebook had been seen by a police officer during the search of October 11th. It is clear that there was no actual search on October 12th, but merely a request for these specific items. Second, the home was jointly owned and occupied by Mr. and Mrs. Chism. Third, the items in question were kept in a bedroom shared by petitioner and his wife. Finally, it appears that the checks in question were from an account handled jointly by Mr. and Mrs. Chism.

In view of these facts the case of McCravy v. Moore, (6th Cir. 1973) 476 F.2d 281, is dispositive. That case squarely holds that where the wife of an accused, having equal rights of access and occupancy, consents to a search of the premises, there is no violation of the rights of the accused. There, as here, the wife was under no suspicion as a party to the crime, and there was also the factor of animosity between husband and wife which has been pointed out in this case.

It is therefore concluded that the petitioner's Fourth Amendment claim is without merit.

*The Speedy Trial Issue*

On October 18, 1967, one week after his arrest, petitioner made application for appointed counsel as an indigent. In considering this request the trial judge conducted hearings on October 18, 27 and December 26, 1967 concerning the defendant's financial condition. During this time counsel was appointed for the limited purpose of a preliminary examination on November 16, 1967 after which the defendant was bound over on the first-degree murder charge.

On January 9, 1968 the trial court ruled against the defendant's request for appointed counsel, but shortly thereafter

did appoint counsel for the limited purpose of taking an interlocutory appeal on the question of defendant's right to appointed counsel. Such appeals may be taken to the Michigan Court of Appeals only upon leave granted. On February 10, 1968 the newly appointed counsel filed an application for leave to appeal which was granted on March 29, 1968 together with an order allowing the Prosecuting Attorneys Association of Michigan to intervene as amicus curiae. By order of that same date the Court of Appeals also shortened by one-half the time allowed to all parties for the submission of their briefs. Upon the understanding that the Court would be unable to hear oral arguments until after its summer recess all parties stipulated to submission on briefs. On July 1, 1968 petitioner moved for an advancement on the Court of Appeals' calendar citing his incarceration. Although both the state and amicus stipulated to this motion, it was denied by order of the Court of Appeals on July 10, 1968. The Court offered no explanation for the denial.

During this period the defendant, proceeding in *pro per*, filed a motion in the trial court on June 20, 1968 seeking dismissal on speedy trial grounds. One month later the prosecutor filed his answer to the motion, but it was nearly another month before a copy of this answer was served upon the defendant on August 19, 1968. Notwithstanding the nature of the motion and the defendant's circumstances, the trial court did not set this motion for hearing until April 10, 1969. On April 16, 1969, exactly 300 days after filing, the motion was denied.

Despite the waiver of oral argument and the filing of petitioner's reply brief on July 1, 1968, it was not until November 13, 1968 that the Court of Appeals announced that it was then taking the interlocutory appeal under advisement. More than five months later the court filed its opinion on April 23, 1969. In finding the trial court to have been in error for refusal to grant appointed counsel the Court said in part:

"At the outset, this Court must affirmatively declare that no one charged with the crime of murder in this State who demands counsel for assistance in his defense may be forced to trial *in propria persona*. We read Am. VI of the amendments to the United States Constitution, made applicable to the various States by Am. XIV, to mean exactly what it says. Questions relating to financial ability to provide counsel, effect of refusal of a spouse to cooperate in obtaining counsel, deliberate transfer of property to effect indigency, are all subsidiary to the prime principle, i. e., one on trial for murder who wants a lawyer shall have one."

\* \* \* \* \* \*

"Defendant Chism is at this moment financially unable to provide counsel for his defense. Whether this resulted from a deliberate transfer of property, his neglect to enforce an equitable property settlement with his wife in the pending divorce case, or his wife's unwillingness to cooperate in obtaining an attorney for his defense, are all beside the point." People v. Chism, 17 Mich.App. 196, 199, 169 N. W.2d 192, 193.

In response to this ruling the trial court made a prompt appointment of counsel and informed him that the matter could be brought on for a jury trial during the following month (May) or in August. Understandably, the newly appointed counsel advised the court that there were certain pre-trial matters he wished to resolve and declined the immediate trial date.

The speedy trial issue was raised for the second time when petitioner's counsel filed a motion to quash the information on June 19, 1969. The trial court heard arguments on the motion July 23rd and ruled against it on August 7, 1969. The case was then set down for trial during the October term but was continued to the January term on defendant's motion after the trial court granted a prosecution motion to endorse

a scientific expert on October 15, 1969. Petitioner's trial was finally commenced on January 20, 1970 and after a ten-day trial the jury returned a verdict of guilty as charged.

Petitioner and amicus have both framed their arguments on the speedy trial question within the four factor analysis established by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In searching for criteria by which to assess the right, the Court rejected two rigid tests which were urged upon it in that case. The first such proposal would have established a specific time period within which a criminal defendant must be offered a trial date. The second would have established the "demand-waiver" doctrine imposing a prior demand for trial as a strict condition precedent to any consideration of a defendant's later contention that he had been denied his right to a speedy trial.

In rejecting the fixed time proposal the Court was careful to note that it was not disapproving the supervisory rules adopted by various courts establishing a period within which a criminal case must normally be brought to trial. *Barker*, supra, at 530, fn. 29, 92 S.Ct. 2182. In rejecting the "demand-waiver" proposal the Court pointed to its prior rulings that the waiver of fundamental rights cannot be presumed from the mere inaction of a defendant.

> "This does not mean, however, that the defendant has no responsibility to assert his right. We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right." 407 U.S. at 528, 92 S.Ct. at 2191.

The Court thus came to its adoption of a balancing test "in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 530, 92 S.Ct. at 2192. Four factors, not intended as exclusive, were identified for

application on a case by case basis as: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192. However, as the Court was careful to point out:

> "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." 407 U.S. at 533, 92 S. Ct. at 2193.

*Length of Delay*

██ The Barker opinion characterized the first factor as a "triggering mechanism". "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530, 92 S.Ct. at 2192. In the case at bar respondent admits that the twenty-seven month delay between arrest and trial is sufficient to raise the issue.

*Defendant's Assertion of His Right*

██ Respondent has also admitted that petitioner made a timely demand for a speedy trial. This Court finds that concession well founded. It is noted that petitioner proceeded in *pro per* with a motion to dismiss on speedy trial grounds during the pendency of his interlocutory appeal on the question of his right to appointed counsel. It might be argued that petitioner's motion was merely aimed at a possible dismissal and

did not necessarily evidence a real desire for an immediate trial. But it would be just as reasonable to infer that his real motive for the dismissal was to cause a reexamination of his case in hopes that the trial court would initiate some action leading to a resolution of his problem of lack of trial counsel.

With the first two factors in this perspective, attention must be focused on the reason for the twenty-seven month delay and the prejudice, if any, suffered by petitioner as a result of that delay.

*Reason for Delay*

When balancing the reason for delay against the other factors,

". . . different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker, supra*, 407 U.S. at 531, 92 S.Ct. at 2192.

Here, as in all cases, the real reason for delay must be identified before it can properly be weighed against the other factors. Respondent lays responsibility for the delay at petitioner's feet. "[T]he petitioner initially caused the problem by voluntarily transferring all his assets to his wife, who was already seeking a divorce, after being charged with first degree murder. The trial court can hardly be faulted for seeking guidance under these circumstances." Respondent's Brief at p. 3. The Court of Appeals took a similar position in holding that, "[T]he flaw in defendant's position, and which is dispositive of the issue, is the fact that the delay was caused by his repeated recourse to the appellate process." 32 Mich.App. 610, 618, 189 N.W.2d 435, 439 (1971). The Court's use of the word "repeated" cannot be explained since the record clearly shows that the petitioner took only one interlocutory appeal.

Even though the trial court could not have envisioned the extraordinary delay which was to be caused by the interlocutory appeal, a delay of at least five or six months must have been expected. Petitioner insisted that he was without means to pay the $5,000 retainer required by an attorney of whom he had inquired about his defense. It was also quite clear that Mrs. Chism had taken a firm position in refusing to help her husband in any way. In light of the seriousness of the charge and petitioner's non-bailable status, it seems that the trial court should not have put the petitioner to a pre-trial appeal on the question of his right to appointed counsel. It certainly would have been better to appoint counsel on a conditional basis, as the Court of Appeals finally directed.

On September 19, 1969, petitioner's appointed counsel filed notice that he was ready for trial and demanded an immediate trial date. Trial was then scheduled for the October term. Prior to this, on August 20, 1969, the prosecution had filed a motion to endorse further witnesses including an expert in the field of neutron activation analysis. Over petitioner's objection the trial court granted this late endorsement motion on October 13, 1969. Thereupon the defense immediately asked for a continuance of the trial then set for the following week and moved that a similar expert be appointed at public expense. This motion was granted and the case was then set down for the January term. The prosecution's motion to endorse further witnesses came more than 18 months after the filing of the information. This motion could have been brought and considered at least several months earlier. Thus, the further delay of the trial date from October, 1969 to the following January was highly unreasonable under the circumstances. Re-

sponsibility for this delay must be charged against the state.

Of the whole twenty-seven month period, the remaining period to be considered is from July 1, 1968, the date of filing of the last brief in the Court of Appeals, to April 23, 1969, the date of the Court's opinion.

■■ In its consideration of the petitioner's speedy trial claim the Michigan Court of Appeals termed the twenty-seven month delay "lamentable", but failed to acknowledge its own role in that delay. The Court quoted People v. Den Uyl, 320 Mich. 477, 31 N.W.2d 699 (1948) for the proposition that a criminal defendant's right to a speedy trial is "modified" upon the filing of an interlocutory appeal as follows:

"One of the circumstances which will constitute good cause for delay, again within reasonable limits of time, *is the taking of an appeal,* whether by the State or another party." (emphasis supplied by the Court of Appeals) 32 Mich.App. 610, 619, 189 N.W.2d 435, 439.

While the quoted language is a correct statement of the law, the proper emphasis must be given to the phrase, "within reasonable limits of time." That is the essence of the balancing test. A criminal defendant cannot be heard to complain about pre-trial delay which is reasonably necessary for a decision on an interlocutory appeal. But this does not mean that his right to speedy trial is modified. The right remains inviolate. In such cases the appellate court shares the affirmative duty of the trial court to bring the pending criminal charges to a reasonably prompt resolution.

In the case at bar the interlocutory appellate delay was far too long. Certainly the Court of Appeals cannot be faulted for any time which elapsed prior to the filing of the appellant's reply brief on July 1, 1968, but at that point in time it became incumbent upon the Court to act with dispatch. It is unclear from the record as to what effect the Court's summer recess had on its work schedule. Whatever the effect, this cannot be assigned as a justifiable reason for delay. Totally aside from the Court's recess there was an inordinate period of more than five months while the case was formally under advisement.

■ Justice Levin's concurring opinion in People v. Chism, 390 Mich. 104, 211 N.W.2d 193, states that the average disposition time for all cases in the Court of Appeals at that time was two to three months. *Id.* at 144, 211 N.W.2d 193. This statement makes no distinction between criminal and civil cases, or between final questions and interlocutory appeals. Given the nature and circumstances of petitioner Chism's case, this Court must conclude that the unjustified delay in the Michigan Court of Appeals was at least eight months. Bearing on the weight to be given this factor is the fact that at the time all parties stipulated to an advancement on the appellate calendar, more than eight months had already elapsed since arrest. Regardless of the reasonableness or unreasonableness of this prior delay, the mere passage of that much time made prompt action by the Court of Appeals even more imperative.

*Prejudice to the Defendant*

The Barker case noted three aspects of the prejudice factor which must be considered in every case.

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. 514, 532, 92 S.Ct. 2182, 2193.

Just as none of the four factors of the *Barker* test are indispensible to a finding that the right to speedy trial has been denied, neither are any of these three aspects of the prejudice factor ab-

solutely essential to a finding of prejudice. The obvious importance of the defense impairment aspect can not be allowed to obscure the "personal prejudice" aspects of oppressive incarceration and anxiety generated by a pending criminal charge. This was recognized by the Supreme Court in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) where it said:

"Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *Id.* at 320, 92 S.Ct. at 463.

The case of United States v. Dyson, (5th Cir. 1972) 469 F.2d 735, involved the speedy trial claim of a selective service registrant who had been convicted for failure to report for civilian duty as a conscientious objector. Although the case was decided on the basis of a statute which directed the Justice Department to give such cases priority, the Court considered the case in light of the speedy trial case law saying, ". . . we start with the proposition that the maximum delay permissible under the statute cannot exceed the minimum delay allowed by the constitutional norm." *Id.* at 738. Despite, in the Court's view, an "air-tight" case for the Government, there had been an unexplained pretrial delay of nearly twenty-two months. In assessing the prejudice factor the Court said:

"It is undisputed that the delay in the present case did not impair the defense, as such, of defendant Dyson. But that is not the sole constitutional norm. *Klopfer* [382 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)], *Barker* [407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972)]. 'The prophylactic effect of the clause as a protection of the innocent is substantially eroded if the fact of conviction in unimpaired trials removes from appellate consideration the interest of minimizing the consequences of incarceration and public accusation.' Godbold, *supra* [24 Ala.L.Rev. 265] at 285." 469 F.2d at 741.

■ It would be difficult to imagine circumstances creating greater "prejudice to the person" of an accused than did the case at bar. There can be no question that petitioner's incarceration was "oppressive" within the Supreme Court's use of that term. The record portrays a man refused help by his wife and who, without counsel, waited in a county jail for more than fifteen months while the legal system took its time to decide that he should have had counsel in the first place. During this time his case progressed not one inch. It was, as the *Barker* Court termed it, "dead time". If the petitioner wasn't overwhelmed with anxiety and concern in the face of the charge and potential life sentence facing him, then this aspect of prejudice will never be found in any case.

Turning to the question of defense impairment prejudice an issue arises as to the burden of proof. Respondent contends that petitioner has failed to demonstrate any actual prejudice in the preparation of his defense. The Michigan Supreme Court likewise allocated this burden to the petitioner.

"There is no testimony relevant to prejudice to defendant's defense because of the length of the case such as loss of witnesses, etc.

\*  \*  \*  \*  \*  \*

Finally, on the matter of prejudice to defendant because of the length of time before his trial, the most important thing is that there is no evidence that a fair trial was jeopardized by delay . . ." People v. Chism, 390 Mich. 104, 115, 211 N.W.2d 193, 198.

Petitioner and amicus contend that the Michigan Supreme Court misassigned this burden and that it is for the respondent to prove that petitioner was not prejudiced in the preparation of his case. They rely on authority from the Fifth, Seventh and District of Columbia Circuits. United States v. Dyson (5th Cir. 1972), 469 F.2d 735; United States v. Macino (7th Cir. 1973), 486 F.2d 750; United States v. Rucker (1972), 150 U.S.App.D.C. 314, 464 F.2d 823; United States v. Perry (D.C.1973), 353 F.Supp. 1235. Research reveals that the Sixth Circuit has not had occasion to consider the question. After reviewing the above-cited cases, and others on which they rely, this Court believes a fair statement of their holdings on this question is as follows: Upon a showing of excessive and unjustified delay, and some showing by the defendant that there is a *reasonable possibility* that the defense was impaired, the burden then shifts to the state to show that the defendant was not in fact prejudiced by the delay.

In this case the petitioner claims actual defense impairment by (1) loss of memory, (2) deterioration of certain physical evidence and (3) extended denial of counsel which resulted in lost opportunity to investigate and establish possible motive of another person or persons. Petitioner cites several instances of memory loss in the trial transcript. [TR 834, 839, 854, 855, 866]. The cold record gives little insight into whether these lapses were materially detrimental to the defense, but as the *Barker* Court observed "Loss of memory . . . is not always reflected in the record because what has been forgotten can rarely be shown." 407 U.S. at 532, 92 S.Ct. at 2193.

A major factor in the prosecution of this case was the motive ascribed to the petitioner. There was conflicting testimony on whether Mr. Chism had ever directly or indirectly expressed any interest in purchasing the sandwich shop owned by the decedent and her husband. However, the prosecution postulated that an offer by petitioner had been refused and that as a result he resorted to murder. Certainly the passage of time involved in securing counsel may well have obscured the equally plausible motives of others.

During the fifteen months that petitioner was incarcerated without the assistance of trial counsel, he was without means to effectively marshall his defense. He had no way of locating and interviewing witnesses while their memories were fresh. There was no one to gather and preserve evidence which might have been favorable to the defense. Meanwhile, the State was proceeding in the case with all the investigative expertise and resources at its disposal. Such an imbalance strikes at the very essence of evenhanded criminal justice.

This Court finds that petitioner has made a reasonable showing of possible defense impairment. The respondent has offered no proof that petitioner was not actually prejudiced in his defense and therefore this factor must be weighed in favor of petitioner.

By all of the foregoing, this Court has endeavored to methodically and fairly analyze this case within the guidelines set down by the Supreme Court in *Barker*. After so doing it must be concluded that petitioner Enoch Chism was denied his Sixth Amendment right to speedy trial by the State of Michigan. Viewed piecemeal some of the delays can be seen as reasonable, but viewed in the aggregate they constitute an excessive amount of time. In testing a speedy trial claim the broad perspective must be taken. A series of "reasonable" delays become increasingly less reasonable when allowed to cumulate.

In the final analysis, the overriding factors in this case were the inordinate delay on the interlocutory appeal and the prejudice caused by petitioner's lack of counsel during that time. These factors alone would support a conclusion that the right was denied.

In light of this conclusion the remedy is absolute. The petition for Writ of Habeas Corpus must be granted. Strunck v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1972).

An appropriate order may be submitted.